Louis G. Bruhn, J.
This is an annulment action based on fraud.
The parties were married on June 20, 1959 and separated sometime in September, 1960 and have continuously remained apart.
Although such separation had taken place some five years before, the instant action was not begun until the service of a summons on October 27, 1965.
The defendant appeared by an attorney but filed no answer and was in default in pleading at the time the plaintiff’s proof was presented.
The recited facts would seem to pose the critical question of whether or not the three-year Statute of Limitations contained in CPLR 214 (subd. 7) must be applied to defeat this action even though such statute was not asserted or pleaded as a defense.
To limit the question posed in this type of action merely to a question of an unpleaded defense overlooks the fact that not only is a Statute of Limitations provided as a defense in CPLR 214 (subd. 7) former subdivision 9 of section 49 of the Civil Practice Act but also that a time limitation is incorporated in subdivision (e) of section 140 of the Domestic Relations Law, former section 1139 of the Civil Practice Act, as part of the substantive cause of action.
*75 Such inclusion of a time provision in both sections would logically suggest an intent on the part of the Legislature to make time a substantive condition of the action so that the court is without jurisdiction to pronounce a degree dissolving the marriage whether the limitation is asserted as a defense or not.
Such conclusion would logically flow from several considerations.
In the first place my learned colleague in the case of Rogers v. Rogers (19 Misc 2d 487, 488) relied upon by the plaintiff herein stated: “ the Appellate Division, Second Department, has intimated in several cases that the public interest in marriage may require the court to take notice of an unpleaded defense (Deitch v. Deitch, 161 App. Div. 492; Merrill v. Merrill, 41 App. Div. 347) ”. (Italics supplied.)
The Deitch case (supra, p. 493) expressed the point quite succinctly: ‘ ‘ Hence the limit on time to avoid a marriage rests upon a basis quite different from the periods to begin other civil suits.”
In addition to this broad policy principle which sustains the conclusion arrived at we can find an equally compelling motivation in the legislative history surrounding the changes in old sections 49 and 1139 of the Civil Practice Act.
The case of Campbell v. Campbell (239 App. Div. 682, affd. 264 N. Y. 616) established the prior law that because an annulment action for fraud could be maintained at any time that such action was excluded from the statutory limitations of time applicable to other actions for fraud, and consequently neither limitations nor laches could be pleaded as a defense.
If the 1954 legislative bill was designed solely to overcome such holding it would have succeeded since such bill merely created a Statute of Limitations by the amendment of section 49 of the Civil Practice Act.
That such was not the sole legislative intent can be derived from the 1954 memorandum of the Committee on State Legislation of the Association of the Bar of the City of New York. Such memorandum, opposing the 1954 bill since it amended only section 49 of the Civil Practice Act stated: “ If the bill’s purpose is to prevent the litigating of stale actions to annul a marriage for fraud, as it seems to be, such purpose has not been satisfactorily accomplished because of the failure to amend Section 1139 at the same time. ” (Italics supplied. N. Y. Legis. Ann., 1954, p. 428.)
With such purpose in mind and understanding as they must have that most all annulment actions for fraud are processed through default rather than as litigated matters, it is more *76 readily understandable why it was insisted that section 1139 of the Civil Practice Act as well as section 49 be amended as they were in 1955, so that time became a substantive and jurisdictional element as well as a defensive maneuver.
Certainly the amendment of section 1139 of the Civil Practice Act is more logically consistent with a desire to preclude the litigation of stale claims processed for the most part by default rather than by contest.
To limit the application of the legislative change solely to the relatively few contested matters practically ignores completely a desire to prevent the litigation of all, rather than just a few, stale claims to annul a marriage on the basis of fraud.
It is for these reasons that I find I must disagree with my learned colleague in the Rogers case (supra).
That others have likewise disagreed can be garnered from the case of Guido v. Guido (12 Misc 2d 549, 550): “ Under the 1955 amendments to section 49 (subd. 9, as added by L. 1955, ch. 257) and section 1139 of the Civil Practice Act, an action for an annulment on the ground of fraud must be brought within three years from the discovery by the plaintiff of the facts constituting the fraud.” (Italics supplied.)
To the same extent we find in the case of Ackerman v. Ackerman (35 Misc 2d 890, 891): “Moreover, even if cohabitation has ceased immediately on discovery of the fraud, it is necessary to bring an action for- an annulment on that ground within three years after the discovery (Civ. Prac. Act, § 49, subd. 9).” (Italics supplied.)
For the reason stated, the complaint is dismissed.