## SCHAEFFER v. SCHAEFFER.

(Supreme Court, Appellate Division, Second Department. December 19, 1913.)

MARRIAGE (§ 58*)—ANNULMENT—GROUNDS.

It is not ground for annulment of marriage that the man was untruthful in his protestations of love.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 115–123; Dec. Dig. § 58.*]

Appeal from Special Term, Kings County.

Action by Cecelia Schaeffer against Raymond S. Schaeffer. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, RICH, and PUTNAM, JJ.

Townsend & Mann, of New York City, for appellant.

CARR, J. This is an appeal from a judgment that dismissed the complaint, in an action brought for an annulment of a·marriage. This action was undefended, and was tried before Blackmar, J. The record on appeal does not contain any copy of a complaint. Apparently there was nothing served on the defendant but a summons, on which was indorsed a statement as to the nature of the action. There was no evidence, but that given by the plaintiff herself.

This is a tragic case for the young woman involved, but the sole question is whether she discloses sufficient facts to justify an annulment of the marriage on the ground of fraud. At the time of her marriage with the defendant, she was about 21 years of age. She had met him at a dance. He appeared to have been attracted towards her, for he asked leave to call upon her. Between February, 1912, and April 11th of the same year, she met him about twice a week at her home. They went out for walks and strolls. He told her that he loved her, and that he fell in love with her at first sight. He brought her flowers. On the Sunday before April 11th, he proposed marriage to her. She asked him if he loved her enough to marry her, considering the short time he knew her, and he said that he did. On April 11th they were married before a minister. He took her to a hotel in Brooklyn, where the marriage was consummated. He told her that he would make arrangements to hire a flat, a "kitchenette," "five rooms." After she left the hotel with him, she spoke about the "kitchenette," and he told her not to worry, that he would call on her on the following Sunday, and that they would go out and look for a "kitchenette," etc. On the following Sunday he came to her house and told her he did not love her, never did love her, and never intended to love her, and insisted that she should get a divorce from him.

The case is a cruel one on its·face; in fact, cruel enough to tempt a disturbance of the judgment of those who are fathers of daughters. But I think we have not yet arrived at a legal stage which requires an annulment of a marriage because one party or both parties were untruthful to each other in their mutual protestations of all-consuming

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and undying love. Marriage is yet a status, on which depends the idea of a family, and on which in turn has arisen the structure of civilization as we know it.

The judgment should be affirmed. All concur.